## HAYNES v. HOWE. (No. 1208.)

(Court of Civil Appeals of Texas.  El Paso. April 14, 1921.)

**1. Sales �kö=197—Contract held not to place title in seller.**

In a suit to recover an automobile, alleging that the defendant buyer was not the owner, a contract construed as not an absolute sale from plaintiff to seller, but merely an executory contract by which the seller might have become owner by carrying out the contract, so that it could not be the basis for title in the seller which in turn would support title in defendant subsequent buyer as an innocent purchaser for value.

**2. Sales ⊃=218½—In an action to recover an automobile, evidence held to show plaintiff had not passed title to seller so that buyer had no title.**

In an action to recover an automobile from buyer, undisputed evidence *held* to show that plaintiff had not parted with his title to the seller, so that the trial court should have instructed a verdict for plaintiff.

Appeal from Comanche County Court; Jno. P. Hoff, Judge.

Action by S. T. Howe against J. H. Haynes. Verdict and judgment for plaintiff for recovery of an automobile and for writ of possession, and the defendant appeals by supersedeas bond. Affirmed.

Hampton, Harris & Hampton, of De Leon, for appellant.

Smith & Woodruff, of Comanche, for appellee.

### Findings of Fact.

HARPER, C. J. Appellee, S. T. Howe, being the owner of an automobile November 8, 1919, entered into the following contract, as pertinent to the case:

"This agreement * * * between Orie W. Lee, * * * party of the first part, and S. T. Howe, * * * party of the second part, witnesseth:

"First, that party of the first part does covenant and agree to organize and operate an association for profit to be known as the Lee Oil Investigation Service, with a capitalization of one hundred thousand dollars issued or represented by one thousand common or equal shares with par value of one hundred dollars each.

"Further, the said party of the first part agrees to set aside forty-five per cent. of the above-mentioned capitalization, this to be used for the benefit of the department heads of the organization, and to become the property of said department heads upon the following arrangement:  For a consideration of twenty-five hundred dollars, one thousand dollars to be paid down with this contract, the remaining fifteen hundred dollars to be prorated over a period of eighteen (18) months and deductable from the salary of said department head.

"The remaining twenty-five shares referred to will be credited to the department head and will become his property at the expiration of one and one-half years of service.  However, the department head shall receive all profits from all such shares, during said eighteen months, the same as though he were the actual owner of same.

"Party of the first part, upon a thirty-day written notice being given to the party of the second part, may at any time during the next ensuing ninety days request a readjustment of settlement, permitting the party of the first part, upon refunding all moneys paid into treasury of company by party of second part, and settlement of moneys due party of the second part, to relinquish said party of the second part from further service of said organization; and likewise said party of the second part upon the above-mentioned notice being given may demand and receive a refund of all moneys paid into treasury of company by party of the second part, and the payment of all salaries due him allowing him to, at his own volition, sever his relations with said organization.

"In the event said department head does not remain in the service of said organization for a period of eighteen months from date, all shares purchased or otherwise obtained shall revert to the treasury of the organization or be surrendered under the ninety-day protection clause, as stated above.

"Now said party of the first part offers to the said party of the second part the opportunity to become connected with the above-mentioned organization as a department head, and under the above conditions.  In addition said party of the second part is to receive for his continued and exclusive service the sum of three hundred dollars monthly, it being understood at this time that the fifteen hundred dollars above referred to is to be deducted proportionately over a period of eighteen months from the above-mentioned monthly salary.

"It is further understood and agreed that said party of the first part shall hold or dispose of the remaining fifty-five per cent. of the total shares, after the aforementioned forty-five per cent. has been set aside for department heads, as he may see fit.  However, it is further understood that it is the intention of the party of the first part to acquire said fifty-five per cent. of shares in virtually the same manner as the second party's acquisition of the 5 per cent. that he is now acquiring, more specifically as follows:

"Three hundred shares to be represented by reliable contracts for service; these contracts to bring to the organization a total of thirty thousand dollars over a period of one year from this date, an additional five thousand dollars to be placed in the treasury of the organization at the inception of same as initial working capital; this to be for an additional fifty shares; the remaining two hundred shares to be paid for in cash at any time during the ensuing eighteen months.

"Further, all department heads shall participate on a pro rata basis irrespective of stock

---

ⓒ=⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

holdings, in all net profits of the leasing department of this organization to the extent of twenty-five per cent. of said net profits.

"Party of the first part in lieu of the initial cash payment of one thousand dollars agrees to accept: One Buick roadster, model E–44, motor No. 413161, chassis No. 401493, at twelve hundred and forty-five dollars ($1,245.-00), and thus suspend monthly payments until February 8, 1920.

"[Signed]  Orie W. Lee, First Party.
          "Samuel T. Howe, Second Party."

Plaintiff testified:

"The company had been organized just in a verbal way when Lee and I entered into this contract. It was never incorporated. It was a partnership, I imagine they call it. It was composed of I, Orie W. Lee, and H. F. Gipson; that's all I believe. We all signed up the contract of partnership. The car was in the Liberty Garage all this time. I took a receipt for it; later turned it over to Mr. Kilmer, at the time or just following the contract. I turned the ticket over to Kilmer for the purpose that my associates could use the car. I withdrew from the contract within the time allowed by the contract for withdrawal. No stock was ever issued to me. I did not know who had my car during all that time. I imagined Lee was using it during all that time. I understood that Lee might take the car and use it, but I didn't mean that he might take it and sell it. So far as the car was concerned, they might take it and use it, and I had no objections. I never gave Lee authority to take the car out. I had no contract or agreement with Lee except this one [identifying the contract]. If those things constitute a sale, I sold the car."

There is no evidence to the contrary.

On February 2, 1920, Lee sold the car to Soloman, a dealer in Dallas, after having presented a receipt for the annual license fee, dated January 19, 1920, issued by the tax collector of Tarrant county, Tex. Soloman purchased without notice of any claim to the automobile by appellee, taking bill of sale from Lee, but the name left blank, and on February 4, 1920, sold to J. H. Haynes, defendant, and, after writing the latter's name in it, delivered the same bill of sale to him.

Howe instituted this suit against Haynes to recover the automobile under the allegations that he was the owner thereof. Prayed judgment for the car or its reasonable value, $950.

Haynes answered by general and special exceptions, general denial, and specially that Howe had sold and delivered the car to Lee for a valuable consideration; that Lee sold to Soloman, delivering bill of sale and tax receipt, etc.; that Soloman sold to Haynes. Thus defendant came into possession of the car in such way as to make him an innocent purchaser.

Tried to a jury. Submitted by general charge. Verdict for plaintiff. Judgment entered that he recover the automobile and for writ of possession, from which this appeal by supersedeas bond.

## Opinion.

The question in this case is: Was appellant under this state of facts an innocent purchaser?

[1] The first assignment charges that the verdict is contrary to the law and the evidence, quoting from the evidence, and asserts that by reason thereof the appellant became an innocent purchaser. The first proposition is that—

"The appellee's written contract with Orie W. Lee constitutes an absolute sale of the automobile to said Lee, the contract providing an actual sale of said automobile for $1,245, and delivery of said car was made under said contract."

A glance at the anomalous writing quoted reveals that every provision in it is executory. By the first paragraph Lee agrees to organize an association for profit. By the second he agrees to set aside 45 per cent. of the capitalization for the department heads, and become the property of the department heads. Under the following arrangement, and the arrangement is meaningless. And later it is written:

"Now, said party of the first part offers to the said party of the second part the opportunity to become connected with the above-mentioned organization as a department head under the above conditions."

Next we note that the party of the first part shall hold or dispose of 55 per cent. of the total shares as he may see fit.

In other words, up to this point the appellee is offered a chance to become a department head for the nominal consideration of $2,500, but he nowhere binds himself to deliver anything, nor does the party of the second part promise to pay anything or to take the stock at any price, and, last but not least:

"Party of the first part in lieu of the initial cash payment of one thousand dollars [from whom is not revealed] agrees to accept one Buick roadster [from whom] * * * at $1,-245.00, and thus suspend monthly payments [from whom?] until February 8, 1920."

There is nothing in this writing which obligates the appellee, party of the second part, to pay anything, nor to convey nor to deliver an automobile to any person, nor does it in fact convey title to one; consequently it could not be the basis for title in Lee which in turn would support title in a subsequent purchaser, Haynes, as an innocent purchaser for value.

[2] The undisputed evidence quoted above shows that appellee had not parted with his title, so the trial court should have instructed a verdict for plaintiff.

The assignments are overruled, and cause affirmed.